# EXHIBIT "A"

# TIME CHARTER

New York Produce Exchange Form
*Issued by the Association of Ship Brokers and Agents (U.S.A.), Inc.*

November 6th, 1913 – Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946;
Revised June 12th, 1981; September 14th, 1993.

**THIS CHARTER PARTY**, made and concluded in _Gdynia_ this _6th_ day of __November__ 2003
Between Messrs. **Stemblar Shipping Company Limited, 1, Costakis Pantelides Avenue, 1010 Nicosia, Cyprus** Owners of the Vessel described below,
and Messrs. **Chinese - Polish Joint Stock Shipping Co., 17 Slaska Str., 81-319 Gdynia, Poland** Charterers.

### Description of Vessel

Name:_**Władysław Orkan**___.Flag Cypriot . Built in 2003 (year).

Port and number of Registry:_Limassol_and Official No.9271925__.

Classed GL*100 A5 E MULTI-PURPOSE CARGO SHIP, G, STRENGTHENED FOR HEAVY CARGO, EQUIPPED FOR CARRIAGE OF CONTAINERS, IW, NAV-O, SOLAS II-2 Reg.54 *MC E AUT_in_Germanischer Lloyd__.

Deadweight_30435 metric tons (cargo and bunkers, including freshwater and stores not exceeding_as per Appendix "A"_metric tons) on a salt water draft of_11.00_m on summer freeboard.

Capacity, if TD panels out of holds 1.414.840_cubic feet grain_1.414.840 cubic feet bale space; capacity if TD panels in holds_1.336.385 cubic feet grain 1.336.385_cubic feet bale space.

Note: as holds are box shape bale = grain

Tonnage_24167_GT.

Speed about__19.5__knots, fully laden, in good weather conditions up to and including maximum Force__4__on the Beaufort wind scale, on a consumption of about__64.0__metric tons of__IFO 380 cst__.

*For further description see Appendix "A" (if applicable)*

### 1. Duration

The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery for a period of _24 months + in Charterers option 12 months plus or minus 30 days each period, for world wide trading with lawful merchandize_____
_____within below mentioned trading limits.

### 2. Delivery

The Vessel shall be placed at the disposal of the Charterers at _drop of last outside pilot safe port Shanghai, China any time day or night, Sunday and holidays included__. The Vessel on her delivery shall be ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for ordinary cargo service, having water ballast and with sufficient power to operate all cargo-handling gear simultaneously.

The Owners shall give the Charterers not less than _15/7/5/3/2/1___ days notice of expected date of delivery.

1

### 3. On-Off Hire Survey

Prior to delivery and redelivery the parties shall, unless otherwise agreed, each appoint surveyors, for their respective accounts, who shall not later than at first loading port/last discharging port respectively, conduct joint on-hire/off-hire surveys, for the purpose of ascertaining quantity of bunkers on board and the condition of the Vessel. A single report shall be prepared on each occasion and signed by each surveyor, without prejudice to his right to file a separate report setting forth items upon which the surveyors cannot agree. If either party fails to have a representative attend the survey and sign the joint survey report, such party shall nevertheless be bound for all purposes by the findings in any report prepared by the other party. On-hire survey shall be on Charterers' time and off hire survey on Owners' time.

Cost of such surveys to be equally shared between the Owners and the Charterers.

### 4. Dangerous Cargo/Cargo Exclusions

(a) The Vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous, injurious, flammable or corrosive nature unless carried in accordance with the requirements or recommendations of the competent authorities of the country of the Vessel's registry and of ports of shipment and discharge and of any intermediate countries or ports through whose waters the Vessel must pass. Without prejudice to the generality of the foregoing, in addition the following are specifically excluded: livestock of any description, arms, ammunition, explosives, nuclear and radioactive materials, _as per Clause 46_____

_____

(b) If IMO-classified cargo is agreed to be carried, the amount of such cargo shall be limited to _____ _____ tons and the Charterers shall provide the Master with any evidence he may reasonably require to show that the cargo is packaged, labelled, loaded and stowed in accordance with IMO regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to unload it at the Charterers' risk and expense.

### 5. Trading Limits

The Vessel shall be employed in such lawful trades between safe ports and safe places within _Institute Warranty Limits_____
_____ excluding
_as per Clause 47_____
_____ as the Charterers shall direct.

### 6. Owners to Provide

The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for all provisions, cabin, deck, engine-room and other necessary stores, including boiler water; shall pay for wages, consular shipping and discharging fees of the crew and charges for port services pertaining to the crew, shall maintain the Vessel's class and keep her in a thoroughly efficient state in hull, machinery and equipment for and during the service, and have a full complement of officers and crew.

### 7. Charterers to Provide

The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except as otherwise agreed; shall pay for port charges (including compulsory watchmen and cargo watchmen and compulsory garbage disposal), all communication expenses pertaining to the Charterers' business at cost, pilotages, towages, agencies, commissions, consular charges (except those pertaining to individual crew members or flag of the Vessel), and all other usual expenses except those stated in Clause 6, but when the Vessel puts into a port for causes for which the Vessel is responsible (other than by stress of weather), then all such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew shall be for the Owners' account. Fumigations ordered because of cargoes carried or ports visited while the Vessel is employed under this Charter Party shall be for the Charterers' account. All other

2

fumigations shall be for the Charterers' account after the Vessel has been on charter for a continuous period of six months or more.

The Charterers shall provide and pay for necessary dunnage and also any extra fittings requisite for a special trade or unusual cargo, but the Owners shall allow them the use of any dunnage already aboard the Vessel. Prior to redelivery the Charterers shall remove their dunnage and fittings at their cost and in their time.

### 8. Performance of Voyages

(a) The Master shall perform the voyages with due despatch, and shall render all customary assistance with the Vessel's crew. The Master shall be conversant with the English language and (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and agency; and the Charterers shall perform all cargo handling, including but not limited to loading, stowing, trimming, lashing, securing, dunnaging, unlashing, discharging, and tallying, at their risk and expense, under the supervision of the Master.

(b) If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

### 9. Bunkers

(a) The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all fuel and diesel oil remaining on board the Vessel as hereunder. The Vessel shall be delivered with: _500_____ _____ long*/metric* tons of fuel oil at the price of _USD 150.-_____ per ton; _50_____ tons of diesel oil at the price of _USD 350.-_____ per ton. The Vessel shall be redelivered with: _500_____ tons of fuel oil at the price of _USD 150.-___per ton; _50_____ tons of diesel oil at the price of _USD 350.-_____ per ton.

*Same tons apply throughout this clause.*

(b) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines and auxiliaries and which conform to the specification(s) as set out in Appendix A. ISO 8217 designation:
      DIESEL OIL   (DMB)
      IFO380CST   (RMH 35)
Charterers have to endeavour and take care to supply such bunker quality. The composition of the fuel oil has to consist of mineral oil products and must not contain chlorinated hydrocarbons and/or tar oils.

During the currency of this charter the Charterers shall ensure that bunker delivery notes are presented to the vessel on the delivery of bunkers and that during bunkering representative samples of the bunkers supplied shall be taken at the vessel's bunkering manifold and sealed in the presence of representatives from the Charterers and the Vessel. The samples shall be kept on board. Any quality dispute shall be settled by fuel expert any lists mutually agreed upon between the Charterers and the Owners. And the findings of fuels any lists shall be conclusive evidence of conformity with bunker fuel specification.

The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker consumption, nor for any time lost and any other consequences.

### 10. Rate of Hire/Redelivery Areas and Notices

The Charterers shall pay for the use and hire of the said Vessel at the rate of $ _as per Addendum 1___ U.S. currency, daily/pro rata including overtime, or $ _____ U.S. currency per ton on the Vessel's total deadweight carrying capacity, including bunkers and stores, on _____ summer freeboard, per 30 days, commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part of a month; hire shall continue until the hour of the day of her redelivery in like good order and condition, ordinary wear and tear excepted, to the Owners (unless Vessel lost) at _ in

3

Charterers' option drop of last outside pilot safe port Hong Kong / S. Korea range or Hamburg / Antwerp range any time day or night, Sunday and holidays included _____
_____unless otherwise mutually agreed.

The Charterers shall give the Owners not less than _15/7/5/3/2/1_____ days notice of the Vessel's expected date and probable port of redelivery.

For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be adjusted to GMT.

## 11. Hire Payment

(a) *Payment*
Payment of Hire shall be made so as to be received by the Owners or their designated payee in Owners' bank as nominated in Addendum 1_____, viz _____
_____
_____ in _____
_____ currency, or in United States Currency, in funds available to the Owners on the due date, 15 days in advance, and for the last month or part of same the approximate amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day as it becomes due, if so required by the Owners. Failing the punctual and regular payment of the hire, or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners) may otherwise have on the Charterers.

At any time after the expiry of the grace period provided in Sub-clause 11 (b) here under and while the hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for the Charterers' account.

(b) *Grace Period*
Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners _5_____ clear banking days (as recognized at the agreed place of payment) written notice to rectify the failure, and when so rectified within those _5_____ days following the Owners' notice, the payment shall stand as regular and punctual.

Failure by the Charterers to pay the hire within _5_____ days of their receiving the Owners' notice as provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11 (a) above.

(c) *Last Hire Payment*
Should the Vessel be on her voyage towards port of redelivery at the time the last and/or the penultimate payment of hire is/are due, said payment(s) is/are to be made for such length of time as the Owners and the Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for the Owners' account before redelivery. Should same not cover the actual time, hire is to be paid for the balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be refunded by the Owners or paid by the Charterers, as the case may be.

(d) *Cash Advances*
Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required by the Owners, subject to 2.5 percent commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances.

## 12. Berths

The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place that Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart always afloat at any time of tide.

### 13. Spaces Available

(a) The whole reach of the Vessel's holds, decks, and other cargo spaces (not more than she can reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle, apparel, furniture, provisions, stores and fuel.

(b) In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.

### 14. Supercargo and Meals

The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the Charterers' risk and see that voyages are performed with due despatch. He is to be furnished with free accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of _as per Addendum 1__ per day. The Owners shall victual pilots and customs officers, and also, when authorized by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc., Charterers paying at the rate of _as per Addendum 1_____ per meal for all such victualling.

### 15. Sailing Order and Logs

The Charterers shall furnish the Master from time to time with all requisite instructions and sailing directions, in writing, in the English language, and the Master shall keep full and correct deck and engine logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs, showing the course of the Vessel, distance run and the consumption of bunkers. Any log extracts required by the Charterers shall be in the English language.

### 16. Delivery/Canceling

If required by the Charterers, time shall not commence before _15th November 2003__ and should the Vessel not be ready for delivery on or before _25th November 2003__ but not later than _2400___ hours, the Charterers shall have the option of canceling this Charter Party.

*Extension of Canceling*

If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready for delivery by the canceling date, and provided the Owners are able to state with reasonable certainty the date on which the Vessel will be ready, they may, at the earliest seven days before the Vessel is expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two days or by the canceling date, whichever shall first occur, then the seventh day after the expected date of readiness for delivery as notified by the Owners shall replace the original canceling date. Should the Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers in accordance with this Clause.

### 17. Off Hire

In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency of stores, fire, breakdown of, or damages to hull, machinery or equipment, grounding, detention by the arrest of the Vessel, (unless such arrest is caused by events for which the Charterers, their servants, agents or subcontractors are responsible), or detention by average accidents to the Vessel or cargo unless resulting from inherent vice, quality or defect of the cargo, dry docking for the purpose of examination or painting bottom, or by any other similar cause preventing the full working of the Vessel, the payment of hire and overtime, if any, shall cease for the time thereby lost. Should the Vessel deviate or put back during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident to the cargo or where permitted in lines 257 to 258 Clause 22 hereunder, the hire is to be suspended from the time of her deviating or putting back until she is again in the same or equidistant position from the destination and the voyage resumed therefrom. All bunkers used by the Vessel while off

5

hire shall be for the Owners' account. In the event of the Vessel being driven into port or to anchorage through stress of weather, trading to shallow harbors or to rivers or ports with bars, any detention of the Vessel and/or expenses resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and the cost of any extra bunkers consumed in consequence thereof, and all extra proven expenses may be deducted from the hire.

Any time vessel if off-hire to be added or not to be added to the charter period at the Charterers' option. Such option to be declared latest by thirty (30) days prior to redelivery.

During the currency of this charter, should the vessel be off-hire for a continuous period of more than thirty (30) consecutive days, the Charterers have the liberty of cancelling this charter party, provided there is not cargo on board.

### 18. Sublet

Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of this Charter Party.

### 19. Dry docking

The Vessel was last dry docked _____.

*(a) The Owners shall have the option to place the Vessel in dry dock during the currency of this Charter at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for bottom cleaning and painting and/or repair as required by class or dictated by circumstances.

*(b) Except in case of emergency no dry docking shall take place during the currency of this Charter Party.

*Delete as appropriate

### 20. Total Loss

Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once.

### 21. Exceptions

The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always mutually excepted.

### 22. Liberties

The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property.

### 23. Liens

The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due under this Charter Party, including general average contributions, and the Charterers shall have a lien on the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once.

The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, which might have priority over the title and interest of the Owners in the Vessel. The Charterers undertake that during the period of this Charter Party, they will not procure any supplies or necessaries or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time.

## 24. Salvage

All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting Owners' and Charterers' expenses and crew's proportion.

## 25. General Average

General average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990, or any subsequent modification thereof in _London_____ and settled in _United States_____ currency.

The Charterers shall procure that all bills of lading issued during the currency of the Charter Party will contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990, or any subsequent modification thereof and will include the "New Jason Clause" as per Clause 31.

Time charter hire shall not contribute to general average.

## 26. Navigation

Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers. The Owners shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew, and shall other matters, same as when trading for their own account.

## 27. Cargo Claims

Cargo claims as between the Owners and the Charterers shall be settled in accordance with the Inter-Club New York Produce Exchange Agreement of February 1970, as amended May 1984, or any subsequent modification or replacement thereof.

However, the Owners are not to be responsible for any damage to the contents of containers shipped unless caused by owners and vessel's default, negligence and defect. The Owners are also not to be responsible for any cargo claims arising out of instructions given by the Charterers to master regarding loading /discharging during bad weather periods.

The Owners agree that provided they are kept regularly advised by the Charterers of all claims, settlement and extension of time, the Charterers may deal with and handle all cargo claims arising out of charter voyages and without prior reference to the owners may settle cargo claims up to a limit of USD 1,000.- (United States Dollars one thousand only) per claim. The Charterers are also authorized to grant extensions of suit time on behalf of owners as and when necessary to claimants involved, provided a copy of this extension of suit time is sent directly to the Owners' office and/or their designator. However, for claims in excess of USD 3000.- (United States Dollars three thousand only), the Owners' prior approval to grant extensions to be obtained by the Charterers.

It is fully understood that as between the Owners and the Charterers that the time limit for cargo claims is two (2) years.

## 28. Cargo Gear and Lights

The Owners shall maintain the cargo handling gear of the Vessel which is as follows:
_as per Appendix "A"_____

providing gear (for all derricks or cranes) capable of lifting capacity as described. The Owners shall also provide on the Vessel for night work lights as on board, but all additional lights over those on board shall be at the Charterers' expense. The Charterers shall have the use of any gear on board the Vessel. If required be the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the Charterers' disposal during loading and discharging. In the event of disabled cargo handling gear, or insufficient power to operate the same, the Vessel is to be considered to be off hire to the extent that time is actually lost to the Charterers and the Owners to pay stevedore stand-by charges occasioned thereby, unless such disablement or insufficiency of power is caused by the Charterers' stevedores. If required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu thereof, in which case the Vessel shall remain on hire.

In the event the above-mentioned failure or breakdown of derricks or crane(s) or any piece of equipment has been caused due to winchmen/stevedores rough handling/damage, the Vessel not to be placed off-hire and the Charterers to hold Owners harmless against any other additional expenses.

### 29. Crew Overtime

In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents, the Charterers shall pay the Owners, concurrently with the hire __as per Addendum 2____ per month or pro rata.

### 30. Bills of Lading

(a) The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates or tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the Master, with the Owner's prior written authority, always in conformity with mates or tally clerk's receipts.

(b) All bills of lading or waybills shall be without prejudice to this Charter Party and the Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter Party and any bills of lading or waybills signed by the Charterers or by the Master at their request.

(c) Bills of lading covering deck cargo shall be claused: "Shipped on deck at Charterers', Shippers' and Receivers' risk, expense and responsibility, without liability on the part of the Vessel, or her Owners for any loss, damage, expense or delay howsoever caused."

### 31. Protective Clauses

This Charter Party is subject to the following clauses all of which are also to be included in all bills of lading or waybills issued hereunder:

(a) CLAUSE PARAMOUNT
"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or such other similar national legislation as may mandatorily apply by virtue of origin or destination of the bills of lading, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said applicable Act. If any term of this bill of lading be repugnant to said applicable Act to any extent, such term shall be void to that extent, but no further."

and

(b) BOTH-TO-BLAME COLLISION CLAUSE
"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

and

(c) NEW JASON CLAUSE
"In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the

8

payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery."

and

(d) U.S. TRADE - DRUG CLAUSE
"In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986 or any re-enactment thereof, the Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana to be loaded or concealed on board the Vessel.

Non-compliance with the provisions of this clause shall amount to breach of warranty for consequences of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines, as a result of the Charterers' breach of the provisions of this clause shall be for the Charterer's account and the Vessel shall remain on hire.

Should the Vessel be arrested as a result of the Charterers' non-compliance with the provisions of this clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their expense put up the bails to secure release of the Vessel.

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the Vessel's personnel."

and

(e) WAR CLAUSES
"(i) No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture, seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de facto authority or any purported governmental organization maintaining naval, military or air forces).

(ii) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not exceeding a valuation of _USD 29,000,000.-_____. In addition the Owners may purchase and the Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a government program, the Vessel shall not be required to enter or remain at any such port or zone.

(iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter, or while the Vessel is on hire under this Charter, the Charterers shall, in respect of voyages to any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war, warlike operations or hostilities.

(iv) Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the Charterers' account."

## 32. War Cancellation

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries: _United States of America, Commonwealth of Independent States, United Kingdom, France, Japan, Germany and China, or in the event of the country the ship is destined for or the Charterers' country of business or the vessel's country of registry will be engaged as an actual participant in a war or war-like situation_____

9

either the Owners or the Charterers may cancel this Charter Party. Whereupon, the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 10; if she has cargo on board, after discharge thereof at destination, or, if debarred under this Clause from reaching or entering it. at a near open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this Charter Party shall apply until redelivery.

### 33. Ice

The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and remain in the port or area or to get out after having completed loading or discharging. Subject to the Owners' prior approval the Vessel is to follow ice-breakers when reasonably required with regard to her size, construction and ice class.

### 34. Requisition

Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by the Owners. The period during which the Vessel is on requisition to the said government shall count as part of the period provided for in this Charter Party.

If the period of requisition exceeds _3_____ months, either party shall have the option of canceling this Charter Party and no consequential claim may be made by either party.

### 35. Stevedore Damage

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.

(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society.

(b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners' work.

### 36. Cleaning of Holds

The vessel to have holds condition on delivery ready to receive ordinary cargo. Holds on redelivery to be in the same condition as on delivery. Any dunnage and/or lashing material placed by the Charterers to be removed by the Charterers prior to redelivery at their expense.

The Charterers shall provide and pay extra for sweeping and/or washing and/or cleaning of holds between voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by local regulations, at the rate of _as per Addendum 1___ per hold.

In connection with any such operation, the Owners shall not be responsible if the Vessel's holds are not accepted or passed by the port or any other authority. The Charterers shall have the option to re-deliver the Vessel with unclean/upswept holds against a lumpsum payment of _as per Addendum 1__ in lieu of cleaning.

### 37. Taxes

Charterers to pay all local, State, National taxes and/or dues assessed on the Vessel or the Owners resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter Party including any taxes and/or dues on cargo and/or freights and/or sub-freights and/or hire (excluding taxes levied by the country of the flag of the Vessel or the Owners).

### 38. Charterers' Colors

The Charterers shall have the privilege of flying their own house flag and painting the Vessel with their own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter Party. Cost and time of painting, maintaining and repainting those changes effected by the Charterers shall be for the Charterers' account.

### 39. Laid Up Returns

The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum period of 30 days if on full hire for this period or pro rata for the time actually on hire.

### 40. Documentation

The Owners shall provide any documentation relating to the Vessel that may be required to permit the Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial responsibility for oil pollution, provided such oil pollution certificates are obtainable from the Owners' P & I club, valid international tonnage certificate, Suez and Panama tonnage certificates, valid certificate of registry and certificates relating to the strength and/or serviceability of the Vessel's gear.

### 41. Stowaways

(a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers.

  (ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the Vessel shall remain on hire.

  (iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to Sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

(b) (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the Vessel shall be off hire.

  (ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

### 42. Smuggling

In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof.

### 43. Commissions

A commission of _____ percent is payable by the Vessel and the Owners to _____

_____

on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

### 44. Address Commission

An address commission of _2.5_____ percent is payable to _Messrs. Chinese-Polish Joint Stock Shipping Co. Gdynia_____

_____on hire earned and paid under this Charter.

### 45. Arbitration

(a) NEW YORK
All disputes arising out of this contract shall be arbitrated at New York in the following manner, and subject to U.S. Law:

One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc.

For disputes where the total amount claimed by either party does not exceed US $ _____**
the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators Inc.

(b) LONDON
All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his action be taken before the award is made. Any dispute arising here under shall be governed by English Law.

For disputes where the total amount claimed by either party does not exceed US $ _20,000.-_____**
the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

*Delete para (a) or (b) as appropriate

** Where no figure is supplied in the blank space this provision only shall be void but the other provisions of this Clause shall have full force and remain in effect.

If mutually agreed, clauses _46_____ to _59_____, both inclusive, as attached hereto are fully incorporated in this Charter Party.


**For and On Behalf of the Owners:**                **For and On behalf of the Charterers:**
                                                    **Chinese-Polish Joint Stock Shipping Co. Gdynia**


_____      _____

## APPENDIX "A"

To Charter Party dated _6th November 2003_____
Between _ Stemblar Shipping Company Limited, Nicosia_____ Owners and Messrs. Chinese -
Polish Joint Stock Shipping Co. Ltd. Gdynia_____ Charterers

**Further details of the Vessel:**

As owners brochure attached except:
Speed and consumption figures above knots is for guidance only and without guarantee.
CONSTANT         : _230_____MTS.
DEAD BALLAST     : _100_____MTS.
H+M VALUE   USD  : _.29,000,000,-_.
ALL DETAILS GIVEN WITHOUT GUARANTEE, BUT GIVEN IN GOOD FAITH AND BELIEVED TO BE CORRECT.

13

# Rider Clause to Charter Party
# dated 6th November 2003

### 46. Cargo Exclusions

The vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous, flammable, injurious, hazardous, corrosive and explosives nature unless carried in accordance with the requirements or recommendations of the competent authorities of the country of the vessel's registry and of ports of shipment and discharge and of any intermediate countries or ports through whose waters the vessel must pass. Without prejudice to the generality of the foregoing, in addition the following are specifically excluded: acids, alumina, ammonium nitrate, anthracite, arms and ammunition, asbestos, asphalt, bitumen, black powder, bones, burnt ore, calcium carbide, calcium hypochlorite, carbide, caustic potash, cement, charcoal, citrus pellets, clay in bulk, clinker, coal, combustible materials, copra and/or its products, creosoted goods, detonator caps, direct reduced iron, dynamite and TNT, expellers, explosives, fishmeal in bulk, gaseous coal, harmful and corrosive fertilizers, hides, ilmenite, iron ore briquettes, iron sponge, livestock, loaded bombs, logs, manioc and/or manioc pellets, naphtha, niger seed, nuclear fuel, nuclear materials or substances and/or their wastes, oil cake, oilseeds, oily metals, petcoke, petroleum and its products, pitch, radioactive produces and waste (this exclusion does not apply to radioisotopes used or intended to be used for any industrial, commercial, agricultural, medical or scientific purposes provided the owners prior approval has been obtained to loading thereof), rockets, salt, sand, sulphur, tar, turpentine, urea, yellow phosphates, zinc ashes.

Dangerous and inflammable cargoes not specifically excluded in this charter party are allowed up to a maximum of 3,000 metric tons per voyage and provided packed, labelled, loaded, stowed, discharged and documented in fully accordance with IMO recommendations and department of trade and industry rules and regulations, any mandatory local requirements and regulations of the flag state. Failing which the master is entitled to refuse such cargo or, if already loaded, to unload it at the Charterers' risk and expense. The master should be provided in advance the details of such IMO cargo intended to be shipped. Final location of stowage of IMO cargo to be at masters discretion as far as vessel's safety is concerned.

All special fittings required on board the vessel for transportation of IMO goods is to be for the Charterers' account and time.

### 47. Trading Exclusions

The vessel shall be employed in such lawful trades between safe ports and safe places excluding all territories within the Republic of Yugoslavia at January 1st 1992, Angola, Arabian Gulf, Cambodia, Eire, Ethiopia, Georgia Incl. Abkhazia, Great Lakes, Haiti, Iran, Iraq, Israel, Kuwait, Laos, Liberia, Mauritania, Namibia, Nicaragua, North And South Yemen, River Orinoco and Amazon, Russian Pacific Coast, Sea of Azov, Sierra Leone, Somalia, South Africa, St. Lawrence, Tanzania, and all war/warlike zones.

The vessel not to be ordered to nor to be bound to enter: a) any place where fever or epidemics are prevalent or to which the master, officers and crew by law are not bound to follow the vessel; b) any ice-bound place or any place where lights, lightships, marks and buoys are or are likely to be withdrawn by reason of ice on the vessel's arrival or where there is risk that ordinarily the vessel will not be able on account of ice to reach the place or to get out after having completed loading or discharging. The vessel not to be obliged to force ice. If on account of ice the master consider it dangerous to remain at the loading or discharging place for fear of the vessel being frozen in and/or damage, he has liberty to sail to a convenient open place and await the Charterers fresh instructions. Unforeseen detention through any of above causes to be for the Charterers' account.

### 48. Crew Assistance

Time charter hire to include rendering customary assistance by the crew inter alia:

A/ raising and lowering of derricks/cranes in preparation for loading and/or discharging.

B/ removing and/or replacing of beams, if any, in preparation for loading and/or discharging.

C/ maintaining power while loading and/or discharging and care of winches/derricks/cranes.

D/ supervision of loading and/or discharging.

E/ to prepare vessel's hatches and cargo gear as much as possible prior to arrival in ports or commencement of operations.

F/ shifting the ship when and where required.

G/ docking and undocking.

H/ if required by charterers, master is to take maximum ballast to keep freeboard lowest possible to facilitate cargo handling operations.

I/ bunkering.

Above services to be rendered provided port regulations permit, the Charterers shall be responsible for any consequences resulting from above matters.

At or off loading and/or discharging ports, the crew is to open and close the hatches and tween deck hatches, when and where required. Provided the same to be allowed by port and/or labor union regulations. Otherwise, the same to be arranged by the Charterers at their time, risks and expense.

### 49. Wireless Station

The vessel shall be equipped with wireless telegraph and VHF telephone to comply with international regulations to allow vessel to communicate with land stations. Vessel is also fitted with direction finder, echo sounding device, gyrocompass and radar in good working order throughout the duration of this charter party.

Charterers and the supercargo to have the right of using vessel's wireless station for receipt and despatch of cables.

### 50. Stowage

The Charterers shall ensure that stowage is effected in accordance with the requirements of this charter party and of the vessel's stability including inter alia, that stack and tier weight are not exceeded and that heavy containers are not stowed over light containers on or under deck, except with the master's prior approval.

The crew to daily watch at sea conditions of containers carried and relash the same or tighten the lashes whichever may be necessary.

In case of reefer containers being carried under refrigeration, vessel's crew to regularly watch temperature in reefer containers as far as possible and take notes of such temperatures as far as possible, and follow the instructions supplied by the Charterers to the master for the maintenance of reefer containers. In case of malfunction of reefer apparatuses, the master to immediately notify the Charterers agents and to render any possible assistance and with weather permitting to help keep the temperature on the reefer containers at the required level. In no case are owners and/or master and/or vessel's crew responsible for proper functioning of reefer apparatuses and/or condition of cargo in reefer containers. Charterers to supply appropriate number of spare reefer sets/spares.

Securing of cargo inside containers and other unit loads to be entirely Charterers' concern and responsibility. Any damage to the ship, her tackle, apparel, furniture or else resulting from insufficient lashing and/or securing of cargo in or on such loads to be repaired at the Charterers' expense and time.

### 51. Loading/Discharge of Cargo

The Owners are not responsible for vessel's loading and discharging cargo at loading and discharging ports. Any permit if so required to be applied at Charterers' time, expense and risk.

No transhipment is allowed. However, the Charterers are allowed to load and discharge with barges, at Charterers risk and expense and always provided the Charterers have supplied sufficient fenders up to

masters requirements. The Charterers are also to indemnify the owners and vessel from all cargo claims subsequent to this operation and also from any damages to the vessel arising therefrom.

During the period of this time charter, the Charterers have the right of taking down or shifting any wooden bulkheads and/or shifting boards if necessary. Time, risk and cost of taking down and re-erecting to be for Charterers' account.

Vessel suitable for grab discharge in lower holds except hold no. 1, but the Charterers' stevedores or their servants shall remain fully responsible for damages which may be caused by use of grabs when loading/discharging bulk cargoes, provided said damages are not caused due to proven defect of vessel's gear or equipment.

Owners hereby undertake that the master shall at all times permit the cargo to be discharged in accordance with the Charterers' instruction. In particular, he shall permit discharge of the cargo into barges, warehouse or store if instructed by the Charterers notwithstanding that original bill(s) of lading for that cargo may not have arrived at the discharge port. In consideration of owners undertaking to this effect, the Charterers warrant that such cargo shall only be discharged into barges, warehouse or store where it shall remain under their control, and shall not be released to third party consignees until original bill(s) of lading have been produced.

In consideration of above, the Charterers agree to indemnify owners and hold them harmless in respect of any claims which they may sustain by reason of the above-mentioned operation.

### 52. Lashing/Unlashing

Lashing, relashing and unlashing cargoes stowed on decks/underdecks to be performed by the Charterers at their time, expense and risk.

Should lashing and/or unlashing work be done by crew hands at both loading/discharging port(s) only if required by the Charterers when such work can not be done by stevedores but always subject to the agreement of the crew which however not to be unreasonably withheld. Charterers to pay reasonable remuneration for above work. Amount paid to the crew for such work is to be agreed between master and Charterers' representative.

The Owners to provide sufficient outfit of container securing devices and materials at delivery. As such devices and materials are lost, damaged or destroyed during the currency of the charter, the Charterers shall at their cost replace and renew them as necessary.

Upon redelivery of the vessel a complete set of such devices and materials in good condition shall be returned to the owners, any deficiencies having been replaced or renewed by the Charterers at their cost.

### 53. Inventory of Charterers' Equipment

Charterers are allowed to use any lashing and securing material as well as any tarpaulins on board.

Any Charterers special equipment placed on board for loading, securing, covering, separating and discharging cargo must be signed by master and/or another officer and to be returned accordingly to the Charterers or their agents as directed by them against respective receipts, normal wear and tear and reasonable wastage always excepted.

It is understood that such equipment is placed on board at Charterers' risk and expense, owners being only responsible to exercise due diligence in the care of the said equipment to avoid damages thereto, pilferage and/or loss thereof.

The Charterers to have the option of fitting lashing materials except directly on top of fuel tanks for cargo including containers, (including eye-plates, rings, connections) if required at their risk and expense. Charterers also to have the free use of existing fittings, as on board, if any, at their risk. However, the use of fittings or placing of Charterers' fittings to be at master's discretion, which not to be unreasonably withheld.

### 54. Final Settlement

Final settlement to be done within seventy (70) days of vessel's redelivery. Charterers are to produce final hire statements, latest fourteen (14) days after the vessel's redelivery, at which time the outstanding balance in owners' favour, if any, to be paid. Should the Charterers at later stage produce vouchers for owner's expense, owners are to pay the same without delay.

### 55. Deratisation/Fumigation

Vessel to provide valid deratisation certificate on delivery and if this does not cover the whole period of the charter and fumigation and/or deratisation is necessary such cost and time to be for owners' account.

If fumigation is necessary on account of cargo carried or port visited under this charter, time and cost of the same including boatage/lodging, hotel expenses for master, officers and crew to be for Charterers account.

### 56. Quarantine

Any quarantine time and expenses due to port of call or cargo carried to be for the Charterers' account. But any time of detention and costs for quarantine due to pestilence, illness of master, officers and/or crew to be for owners' account unless such detention is a result of any act/neglect/default of the Charterers or their agents.

### 57. Pollution

The Owners warrant that throughout the currency of this charter they will provide the vessel with the following certificates:

1/

(a) Certificates issued pursuant to section 311 (p) of the U.S. federal water pollution control act, as amended (title 33 U.S. code, section 1321 (p)).

(b) Certificates which may be required by U.S. federal legislation at any time during the currency of this charter provided always that such legislation incorporated the C.L.C. as amended by the 1984 protocol thereto or contains provisional equivalent thereto.

2/ notwithstanding anything whether printed or typed herein to the contrary:

(a) Save as required for compliance with paragraph 1 hereof, owners shall not be required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel to lawfully enter, remain in or leave any port, place, territorial or continuous waters of any country, state or territory in performance of this charter.

(b) The Owners shall not be liable for any loss, damage, liability or expense whatsoever and howsoever arising which the Charterers and/or the holders of any bill of lading issued pursuant to the charter may sustain by reason of the vessel's inability to perform as aforesaid.

3/ The Charterers warrant the terms of this clause will be incorporated effectively into any bill of lading issued pursuant to this charter.

### 58. Blacklist

Owners warrant that the vessel has not been "black-listed" by any governmental authorities or by other organizations such as labour unions or fuel supplies in any of the countries to which she might trade in the course of this charter party.

### 59. Fixture/Amendments

All negotiation and eventual fixture to remain absolutely private and confidential.