# EXHIBIT "C"

Goods or this Bill of Lading and anyone acting on behalf of such person.
"Goods" means the whole or any part of the cargo received from the Shipper and includes the packing and any equipment or container not supplied by or on behalf of the Carrier.
"Container" includes any container, trailer, transportable tank, flat or pallet.
"Vessel" includes any substituted vessel and any vessel to which transhipment may be made in the performance of this contract.
"Delivery" means delivering the Goods to or placing the Goods at the disposal of the party entitled to receive them.
"Combined Transport" arises when the Place of receipt and Place of destination are indicated on the face hereof in the relevant spaces.
"Port to Port Shipment" arises when the carriage called for in this Bill of Lading is not Combined Transport.
"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading signed at Brussels, on 25 August, 1924.
"Hague-Visby Rules" means the Hague Rules as amended by the Protocol to amend the said convention signed at Brussels, on 23 February, 1968.

### 2. Carrier's Tariff.

The terms of the Carrier's applicable Tariff at the date of shipment are incorporated herein. The relevant provisions of the applicable Tariff are available from the Carrier upon request. In the case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

### 3. Methods and Routes of Transportation.

1) The Carrier may at any time and without notice to the Merchant
   a) use any means of transport or storage whatsoever;
   b) transfer the Goods from one conveyance to another including transhipping or carrying the same on another vessel than the vessel named overleaf or on any other means of transport whatsoever;
   c) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route) and proceed to or stay at any place or port whatsoever once or more often and in any order;
   d) load and unload the Goods at any place or port (whether or not any such port is named overleaf as the Port of Loading or Port of Discharge) and store the Goods at any place or port;
   e) comply with any orders or recommendations given by any government or authority or any person or body acting or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on the conveyance employed by the Carrier the right to give orders or directions.
2) The liberties set out in sub-clause 1) may be invoked by the Carrier for any purpose whatsoever including undergoing repairs, towing or being towed, adjusting instruments, drydocking and assisting vessels in all situations, and anything done in accordance with sub-clause 1) or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation.

### 4. General Container Clause.

1) Optional Stowage
Goods may be stowed by the Carrier by means of containers or similar articles of transport used to consolidate Goods.
Goods stowed in containers, whether by the Carrier or by the Merchant, may be carried on deck or under deck without notice to the Merchant. Such Goods (other than livestock and plants) shall participate in general average and shall be deemed to be within the definition of Goods for the purpose of the Hague Rules or the Hague-Visby Rules as the case may be.
2) Carrier's Owned Container
If the Carrier's owned container or other equipment is supplied by the Carrier for pre-carriage or on-carriage or unpacking by the Merchant, the Merchant shall return the empty container or other equipment as required by the Carrier clean and free of smell to the place appointed by the Carrier within the time prescribed. If the Merchant fails to do so, the Merchant shall be liable for detention and expenses arising from such non-return.
The Merchant shall be liable for any loss of or damage to the Carrier's owned container or other equipment while it is in the Merchant's custody or in the custody of anyone acting on Merchant's behalf. The Merchant shall also be liable for any loss of or damage to the contents loaded inside or any injuries or death occurred during such period. If any claim with respect to the Carrier's liability to the third party for such damages alleged is raised, the Merchant shall hold the Carrier harmless and indemnify the Carrier for all loss suffered.
3) Shipper's Owned and Stuffed Container
If the container is owned by the Shipper and stuffed or loaded by or on behalf of the Shipper, the Carrier shall not be liable for the loss of or damage to the contents therein caused by:
   a) latent or apparent defect of the container;
   b) unsuitability of the Goods for carriage by sea in containers;
   c) improper stowage or rough handling of the Goods.
4) Shipper's Stuffed but Carrier's Owned Container
If the container is owned by but stuffed or loaded by or on behalf of the Shipper, the Carrier shall not be liable for the loss of or damage to the contents therein caused by:
   a) unsuitability of the Goods for carriage by sea in containers;
   b) Improper stowage or rough handling of the Goods.
5) Full Container Loaded
If a full loaded container (FCL), irrespective of whether the container is owned by the Shipper or the Carrier, is delivered by the Carrier with its seal intact, such delivery shall constitute full and complete performance of the Carrier's obligations and the Carrier shall not be liable for any loss of or damage to the contents filled inside.
6) The Merchant shall indemnify the Carrier against any loss, damage, liability or expense whatsoever and howsoever arising caused by one or more of the matters referred to in subclauses 3) and 4).

### 5. Matters Affecting Performance.

1) If at any time the performance of the contract evidenced by this Bill of Lading is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of whatsoever kind which cannot be avoided by the exercise of reasonable endeavours the Carrier (whether or not the transport has commenced) may without notice to the Merchant treat the performance of this contract as terminated and place the Goods or any part of them at the Merchant's disposal at any port or place whatsoever which the Carrier or Master may consider safe and advisable in the circumstances whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full freight and charges on Goods received for transportation and the Merchant shall pay any additional costs of carriage to and delivery and storage at such port or place.
2) The circumstances referred to in sub-clause 1) above shall include but shall not be limited to those caused by the existence, or apprehension of war declared or undeclared hostilities warlike or belligerent acts or operations, riots, civil commotions or other disturbances, closure or obstacles in or danger to any canal, blockade of port or place or interdict or prohibition of or restriction on commerce or trading quarantine, sanitary or other similar regulations or restrictions, strikes, lockouts or other labour troubles whether partial or general and whether or not involving employees of the Carrier or his sub-contractors, congestion of port, wharf, sea terminal or any other place, shortage, absence or obstacles of labour or facilities for loading, discharge, delivery or other handling of the Goods, epidemics or diseases, bad weather, shallow water, ice, landslide or other obstacle in navigation or haulage.
3) The Merchant shall be informed if possible.

### 6. Sub Contracting.

1) The Carrier shall be entitled to sub-contract on any terms for the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.
2) The Merchant undertakes that no claim or allegation shall be made against any servant, agent or sub-contractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned by any of them any liability whatsoever in connection with the Goods, and, if any such claim or allegation should nevertheless be made to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent and sub-contractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for their benefit and, in entering into this contract, the Carrier, to the extent of those provisions,

1) Where the carriage called for by this Bill of Lading is a Port to Port Shipment, then the Carrier's liability for loss of or damage to the Goods shall be determined by the Hague Rules. If the carriage is performed between ports of States which national laws make the Hague-Visby Rules compulsorily applicable to this Bill of Lading, then the Carrier's liability for loss of or damage to the Goods shall be determined by Hague-Visby Rules.
Neither the Hague Rules nor the Hague-Visby Rules shall apply to this contract where the Goods carried hereunder consist of live animals or cargo which by this contract is stated as being carried on deck and is so carried.
2) All the terms of this Bill of Lading, except Clause 7.B, shall apply to such carriage, save that if any term in this Bill of Lading is inconsistent with or repugnant to the Hague Rules or the Hague-Visby Rules as the case may be it shall to the extent of such inconsistency or repugnance and no further be null and void.
3) Notwithstanding the above the Carrier's liability, if any, shall be limited to loss of or damage to the Goods occurring from and during loading onto any sea-going vessel up to and during discharging from that vessel.
If the carriage of Goods is performed on "free in" or "free out" terms, the Carrier shall not be liable for any loss or damage to the Goods occurred during handling, loading, stowage, securing, lashing or unloading of the Goods by or on behalf of the Merchant.

#### B. Combined Transport.

Where the carriage called for by this Bill of Lading is a Combined Transport, then save as otherwise provided in this Bill of Lading, the Carrier shall be liable for loss of or damage to the Goods to the extent set out below:
1) When the stage of transport where the loss or damage occurred is not known the Carrier shall not be liable for loss of or damage to the Goods resulting from:
   a) acts or omissions of the Merchant, or any person other than the Carrier acting on behalf of the Merchant or from whom the Carrier took the Goods into his charge;
   b) insufficiency or defective condition of the packing or marks;
   c) handling, loading, stowage or unloading of the Goods by or on behalf of the Merchant;
   d) inherent vice of the Goods;
   e) strike, lock-out, stoppage or restraint of labour, the consequences of which the Carrier could not avoid by the exercise of due diligence;
   f) a nuclear incident;
   g) any cause or event which the Carrier could not avoid and the consequences of which he could not prevent by the exercise of due diligence.
The burden of proving that the loss or damage was due to one or more of the above causes or events shall rest upon the Carrier. When the Carrier establishes that, in the circumstances of the case, the loss or damage could be attributed to one or more of the causes or events specified in b. to d. above, it shall be presumed that it was so caused. The Merchant shall, however, be entitled to prove that the loss or damage was not, in fact, caused wholly or partly by one or more of these causes or events.
2) When the stage of transport where the loss or damage occurred is known.
   a) when the stage of transport (not being the stage of transport by sea or inland waters) where the loss of or damage to the Goods occurred is known, the liability of the Carrier in respect of such loss or damage shall be determined by the provisions contained in any International Convention or national law applicable, which provisions:
      i. cannot be departed from by private contract to the detriment of the Merchant; and
      ii. would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of transport where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such International Convention or national law applicable. In absence of mandatory provisions of an International Convention or national law the provisions of Clause 7.B.1 shall apply; or
   b) when the loss of or damage to the Goods occurred during transportation by sea provisions contained in the Clause 7.A. shall apply; or
   c) in respect of carriage by inland waters the Hague Rules shall apply if not contrary to national law compulsorily applicable in this stage of transport.
If the whole of the carriage undertaken by the Carrier is limited to carriage from a Container Yard (CY) or Container Freight Station (CFS) in or immediately adjacent to the sea terminal at the port of loading to a CY or CFS in or immediately adjacent to the sea terminal at the port of discharge, the liability of the Carrier shall be determined by Clauses 7.A.1) and 7.A.2) irrespective of whether the loss or damage is proved to have occurred during the period of carriage at sea or prior or subsequent thereto.

### 8. Amount of Compensation

Unless the nature and value of the Goods have been declared by the Shipper before shipment and inserted in this Bill of Lading, the Carrier shall not in any event be liable for any loss of or damage to the Goods in an amount exceeding the equivalent of SDR 666.67 per package or unit or SDR 2.00 per kilogram of gross weight of the Goods lost or damaged, whichever is higher.
The term SDR means Special Drawing Rights as defined by the International Monetary Fund.
Where a Container, pallet or similar article of transport is used to consolidate Goods, the number of packages enumerated if the Bill of Lading as packed in such article of transport shall be deemed as the number of packages. If not so enumerated, the Goods in such article of transport shall be deemed as one package. Except as aforesaid if the article of transport is not owned or furnished by the Carrier, such article of transport shall be deemed as one package.
In no case can the amount of compensation exceed the actual loss suffered by the Merchant.
The Carrier shall not be liable in any event for loss of or damage to the Goods if the nature or value thereof has been knowingly mis-stated by the Shipper in the Bill of Lading.

### 9. Delay

The Carrier does not undertake that the Goods shall arrive at the port of discharge or place of destination at any particular time or to meet any particular market or use, and the Carrier shall in no circumstances be liable for any direct, indirect or consequential loss or damage caused by delay unless there is such liability under any International Convention or national law, the provisions of which cannot be departed from by private contract to the detriment of the Merchant. However, the liability of the Carrier for any loss or damage caused by delay shall in no case exceed the amount of freight for that stage of transport at which the delay occurred.

### 10. Notice of Loss and Time Bar

Unless notice of loss or damage is given in writing to the Carrier or his agent at the port of discharge before or at the time of taking delivery of the Goods, or, if the loss or damage are not apparent, within three consecutive days, such delivery shall be prima facie evidence of the delivery by the Carrier of the Goods as described in the Bill of Lading.
The Carrier, its servants, agents and the Vessel shall in any event be discharged from all liabilities whatsoever under this Bill of Lading unless suit is brought within one year after the delivery of the Goods or the date when the Goods should have been delivered.

### 11. Delivery of Goods

The Goods shall be deemed delivered when delivered to or placed at the disposal of or enables the Merchant to take the Goods at any time and at any place whatsoever at the time or if the Merchant has delivery order issued by the Carrier or at the place of business of the master may put the Goods into warehouse or transferred them to any others to whom the Merchant at the Merchant's risk and expense.

### 12. Carrier's Responsibility

The Bill of Lading shall be prima facie evidence of the taking in charge by the Carrier of the Goods as therein described in respect of the particulars when he had reasonable means of checking. Proof to the contrary shall not be admissible when this Bill of Lading is issued in negotiable form and has been transferred to a third party acting in good faith.

### 13. Shipper's Responsibility

### 14. Dangerous Goods

No Goods which are of dangerous, inflammable, radioactive or damaging nature shall be shipped without the consent of the Carrier. At the time of shipment of such Goods, the Shipper shall, in compliance with the regulations governing the carriage of such Goods, have them properly packed, distinctly marked and labelled and notify the Carrier in writing of their proper description, nature and the precautions to be taken. In case the Shipper fails to notify the Carrier or notifies him inaccurately, the Carrier may have such Goods landed, destroyed or rendered innocuous when and where circumstances so require, without compensation. The Shipper shall be liable to the Carrier for any loss, damage or expense resulting from such shipment.
Notwithstanding the Carrier's knowledge of the nature of the dangerous Goods and his consent to carry, he may still have such Goods landed, destroyed or rendered innocuous without compensation, when they become an actual danger to the ship, the crew or other persons on board or to other Goods.
The Carrier shall be under no liability to make any general average contribution in respect of such Goods.

### 15. Deck Cargo, Animals and Plants Clause

Goods (other than those stuffed in containers) that are stated on the front of this Bill of Lading to be stowed on deck as contracted and are so carried, shall be carried solely at the risk of the Merchant. The Carrier shall not be liable for any loss of or damage to such Goods howsoever caused.
In the case of live animals the Carrier shall not be liable for loss, damage, injury, illness or death howsoever caused.
The Merchant shall indemnify the Carrier against any loss suffered and all extra costs incurred by the carriage of such deck cargo, live animals and plants.

### 16. War, Quarantine, Ice, Strikes, Congestion, Etc.

Should it appear that war, blockade, piracy, epidemics, quarantine, ice, strikes, congestion and other causes beyond the Carrier's control would prevent the Vessel from reaching or entering the port of discharge and/or discharging the Goods in the usual manner thereat and /or departing therefrom, all of which safely and without unreasonable delay, the Carrier is entitled to discharge the Goods at the port of loading or any other safe and convenient port and the contract of carriage and all the conditions of this Bill of Lading shall be deemed fulfilled as if the vessel had called at and had the Goods discharged at the original port of discharge.
Any extra expenses incurred under the aforesaid circumstances shall be borne by the Merchant and the Carrier shall have a lien on the Goods for collecting such expenses.

### 17. Freight

1) Freight shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid and non-returnable in any event.
2) The Merchant's attention is drawn to the stipulations concerning currency in which the Freight is to be paid, rate of exchange, devaluation and other contingencies relative to Freight is the applicable Tariff.
3) The Freight has been calculated on the basis of particulars furnished by or on behalf of the Shipper. The Carrier may at any time open any Container or other package or unit in order to reweigh, remeasure or revalue the contents, and if the particulars furnished by or on behalf of the Shipper are incorrect, it is agreed that a sum equal to either five times the difference between the correct Freight and Freight charged or to double the correct Freight less the Freight charged whichever sum is the smaller, shall be payable as liquidated damages to the Carrier.
4) Except as may be provided to the contrary in the applicable Tariff all unpaid charges shall be paid without any set-off, counter-claim, deduction or stay of execution.
5) Freight and liquidated damages under sub-clause 17.3) above may be recovered by the Carrier from any person falling within the definition of Merchant in Clause 1 whether or not such person is the Shipper.

### 18. Lien

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract as well as for general average contributions, to whomsoever due, for salvage remuneration and compensation for damages caused by the Goods. In any event any lien shall extend to cover the cost of recovering the sums due, and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant.

### 19. General Average

General Average shall be declared, adjusted and settled at any port or place and in any currency at the Carrier's option according to the York-Antwerp Rules 1994, or any modification thereof in respect of all Goods, whether carried on or under deck.

### 20. New Jason Clause

In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the Goods, Shippers, Consignees or owners of the Goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods.
If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon shall, if required, be made by the Goods, Shippers, Consignees or owners of the Goods to the Carrier before delivery.

### 21. Both to Blame Collision Clause

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the Goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of the said Goods, paid or payable by the other or non-carrying ship or her owners to the owners of the said Goods and set off recouped or recovered by the other or non-carrying ship or her owner as part of their claim against the carrying ship or Carrier.
The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding or objects are at fault in respect of a collision or contract.

### 22. USA Clauses

1) If this Bill of Lading covers Goods shipped to or from the United States of America, the Carriage of the Goods by Sea Act of the USA, approved April 16, 1936, shall be deemed to be incorporated herein. Nothing herein contained shall be deemed a surrender by the Carrier of any of its rights, immunities, defences and limitations of the said Act apply to Goods whether carried on deck or under deck.
2) In the case of any loss or damage in connection with Goods exceeding in equivalent of USD 500.00 lawful money of the United States per package, or in the case of Goods not shipped in packages, per shipping unit, the value of the Goods shall be deemed to be USD 500.00 per package or per shipping unit.
The Carrier's liability, if any, shall be determined on the basis of the value of USD 500.00 per package or per shipping unit unless the nature of the Goods and a valuation higher than USD 500.00 per package or per shipping unit have been declared in writing by the Shipper upon delivery to the Carrier and inserted in the Bill of Lading and an extra charge paid. In such case, if the actual value of the Goods per package or per shipping unit has exceeded such declared value, the value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.
3) In case the contract evidenced by this Bill of Lading is subject to the US Carriage of Goods by Sea Act, the provisions stated in the said Act shall govern before loading and after discharge