# EXHIBIT 1

# BILL OF LADING
## FOR COMBINED TRANSPORT OR
## PORT TO PORT SHIPMENTS

Shipper Insert Name, Address and Phone

WAI MING (TIANJIN) INTERNATIONAL TRADING CO. LTD.,
NO.2409 TIANXING RIVER FRONT SQUARE,NO.81 11-JING
ROAD,HEDONG DISTRICT,TIANJIN,CHINA .

Ref. No.

B/L No.  CPJOOR15TXGNEW03

## CHINESE-POLISH JOINT STOCK SHIPPING COMPANY

Consignee Insert Name, Address and Phone

TO ORDER OF BANK OF AMERICA

**C-P**

Notify Party Insert Name, Address and Phone

UNIWIRE TRADING LLC,908 MADISON AVENUE,STE 902,
NEW YORK,NY 10022

| | | |
|---|---|---|
| Pre-carriage by | Place of receipt * | |
| Vessel  WLADYSLAW ORKAN | Voy  V.15 | Flag |
| Port of Loading  XINGANG ,CHINA | Port of Discharge  NEW ORLEANS,LA | Place of destination * |

HEAD OFFICE
55 YANAN ROAD EAST
200002 SHANGHAI, CHINA
POB: 002-047
PHONE: (86-21) 63360108
FAX: (86-21) 63361997
E-MAIL: SHIPPING@CHIPOLBROK.COM.CN

BRANCH OFFICE
ŚLĄSKA 17 STR.
81-319 GDYNIA, POLAND
POB: 226
PHONE: (48-58) 628 65 25
FAX: (48 58) 628 65 55
E-MAIL: SHIPPING@CHIPOLBROK.COM.PL

No. of Original Bs/L  THREE

| Marks and Nos | Number and Kind of Pkgs: Description of Goods | Gross weight  kg | Measurement CBM |
|---|---|---|---|
| N/M | 2720BUNDLES    GALVANIZED ERW PIPES | 2303550.5KGS | 2303M3 |

*(watermark: ORIGINAL)*

ON BOARD
S.G.A.

SHANGHAI

NORTON LILLY INTL.
400 POYDRAS STREET SUITE 1760
NEW ORLEANS,LA 70130
TEL: 504-581-4141
FAX:504-581-2122
E-mail:NO-OPS@NORTONLILLY.COM
PORT MANAGER KLINE SACK-DIRECT LINE 504-680-4336
PLS KINDLY BE GUIDED ACCORDINGLY

OCEAN ON BOARD  2 8 APR 2006
FREIGHT PREPAID
LIC NUMBER 64416860

2 8 APR 2006

### TOTAL:TWO THOUSAND SEVEN HUNDRED AND TWENTY BUNDLES ONLY

**General Clause**
The Merchant hereby expressly accepts and agrees to all printed, written or stamped terms of this Bill of Lading including those on the back hereof, notwithstanding the non-signing of this Bill of Lading by the Merchant.

Container Nos.      Seal Nos.      Freight and Charges

current war risk exclusions issued by the international underwriters association of london,the carrier reserve the right without prior notice to the merchant to impose an additional extra risk surcharge,the surcharge is payable whether or not the carriage has commenced and freight is prepaid or collect

Received by the Carrier from the Shipper in apparent good order and condition/unless otherwise noted herein/the total numbers or quantity of Containers or other packages or units indicated above stated by the Shipper to comprise the cargo specified above for transportation.

**Law and Jurisdiction Clause**
Any claim or action against the Carrier arising from or in connection with this Bill of Lading whether in breach of contract or in tort or otherwise shall be exclusively governed by Polish law and brought before District Court in Gdansk.

One of the Bills of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order.
IN WITNESS whereof this Bill of Lading has been signed in the number indicated above, one of which being accomplished the others to be void.

| Containers shipped on terms | Freight Payable at | Place and date of issue  TIANJIN  2 8 APR 2006 |
|---|---|---|

AS AGENT FOR THE CARRIER:
CHINESE-POLISH JOINT STOCK SHIPPING COMPANY

* Applicable only when this document is used as a Combined Transport Bill of Lading.

Cargo value if declared

Signed for the Carrier

AS AGENTS    GENERAL DIRECTOR

1

**1. Definitions:**

"Carrier" shall mean the party on whose behalf this Bill of Lading has been signed.

"Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading, any person owning or entitled to the possession of the Goods or this Bill of Lading and any one acting on behalf of any such person.

"Goods" means the whole or any part of the cargo received from the Shipper and includes the packing and any equipment or container not supplied by or on behalf of the Carrier.

"Container" includes any container, trailer, transportable tank, flat or pallet.

"Vessel" includes any substituted vessel and any vessel to which transhipment may be made in the performance of this contract.

"Delivery" means delivering the Goods to or placing the Goods at the disposal of the party entitled to receive them.

"Combined Transport" arises when the Place of receipt and Place of destination are indicated on the face hereof in the relevant spaces.

"Port to Port Shipment" arises when the carriage called for in this Bill of Lading is not Combined Transport.

"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading signed at Brussels, on 25 August, 1924.

"Hague-Visby Rules" means the Hague Rules as amended by the Protocol to amend the said convention signed at Brussels, on 23 February, 1968.

**2. Carrier's Tariff.**

The terms of the Carrier's applicable Tariff at the date of shipment are incorporated herein. The relevant provisions of the applicable Tariff are available from the Carrier upon request. In the case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

**3. Methods and Routes of Transportation.**

1) The Carrier may at any time and without notice to the Merchant
   a) use any means of transport or storage whatsoever;
   b) transfer the Goods from one conveyance to another including transhipping or carrying the same on another vessel than the vessel named overleaf or on any other means of transport whatsoever;
   c) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route) and proceed to or stay at any place or port whatsoever once or more often and in any order;
   d) load and unload the Goods at any place or port (whether or not any such port is named overleaf as the Port of Loading or Port of Discharge) and store the Goods at any place or port;
   e) comply with any orders or recommendations given by any government or authority or any person or body acting or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on the conveyance employed by the Carrier the right to give orders or directions.

2) The liberties set out in sub-clause 1) may be invoked by the Carrier for any purpose whatsoever including loading or unloading, repairs, storage, transhipping, instructions, dry docking and assisting vessels in all situations, and anything done in accordance with sub-clause 1) or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation.

**4. Optional Container Clause.**

1) Optional Storage

Goods may be stowed by the Carrier by means of containers or similar articles of transport used to consolidate Goods.

Goods stowed in containers, whether by the Carrier or by the Merchant, may be carried on deck or under deck without notice to the Merchant. Such Goods (whether livestock and plants) shall participate in general average and shall be deemed for the definition of Goods for the purpose of the Hague Rules or the Hague-Visby Rules, as the case may be.

2) Carrier's Owned Container

If the container is owned or supplied by or on behalf of the Carrier, the Merchant shall return the empty container to the place named by the Carrier at the time and in the manner prescribed. If the container is not returned within the time prescribed in the Carrier's Tariff, the Merchant shall be liable for any detention, loss or expense arising from such non-return.

The Merchant shall be liable for any loss of or damage to the Carrier's owned container or other equipment while it is in the Merchant's custody or in the custody of anyone acting on Merchant's behalf. The Merchant shall be liable for any loss of or damage to the contents loaded inside or any injury to or death of any person during the period. If any claim with respect to the Carrier's liability or the loss of any third party for the damages alleged is raised, the Merchant shall hold the Carrier harmless and indemnify the Carrier for all loss suffered.

3) Shipper's Owned and Stuffed Container

If the container is owned by the Shipper and stuffed or loaded by or on behalf of the Shipper, the Carrier shall not be liable for the loss of or damage to the contents therein caused by:
   a) latent or apparent defect of the container;
   b) unsuitability of the Goods for carriage by sea in containers;
   c) improper stowage or rough handling of the Goods.
   d) Shipper's faults for Carrier's Owned Container

If the container is owned by the Carrier but stuffed or loaded by or on behalf of the Shipper, the Carrier shall not be liable for the loss of or damage to the contents therein caused by:
   a) unsuitability of the Goods for carriage by sea in containers;
   b) improper stowage or rough handling of the Goods.

5) Full Container Load

If a full loaded container (FCL), irrespective of whether the container is owned by the Shipper or the Carrier, is delivered by the Carrier with its seal intact, such delivery shall constitute full and complete performance of the Carrier's obligations and the Carrier shall not be liable for any loss of or damage to the contents filled inside.

6) The Merchant shall indemnify the Carrier against any loss, damage, liability or expense whatsoever arising caused by one or more of the matters referred to in subclauses 3) and 4).

**5. Matters Affecting Performance.**

1) If at any time the performance of the contract evidenced by this Bill of Lading is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of whatsoever kind which cannot be avoided by the exercise of reasonable endeavours the Carrier (whether or not the transport has commenced) may without notice to the Merchant treat the performance of this contract as terminated and place the Goods or any part of them at the Merchant's disposal at any port or place whatsoever which the Carrier or Master may consider safe and advisable in the circumstances whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full freight and charges on Goods received for transportation and the Merchant shall pay any additional costs of carriage to and delivery and storage at such port or place.

2) The circumstances referred to in sub-clause 1) above shall include but shall not be limited to those caused by the existence, or apprehension of war declared or undeclared hostilities warlike or belligerent acts or operations, riots, civil commotions or other disturbances, closure or obstacles to or danger to any canal, blockade of port or place or interdict or prohibition of or restriction on commerce or trading quarantine, sanitary or other similar regulations or restrictions, strikes, lockouts or other labour troubles (whether partial or general and whether or not involving employees of the Carrier or his sub-contractors, congestion of port, wharf, sea terminal or any other place, shortage, absence or obstacles of labour or facilities for loading, discharge, delivery or other handling of the Goods, epidemics or diseases, bad weather, shallow water, ice, landslide or other obstacle to navigation or harbour.

3) The Merchant shall be informed if possible.

**6. Sub Contracting.**

1) The Carrier shall be entitled to sub-contract on any terms for the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.

2) The Merchant undertakes that no claim or allegation shall be made against any servant, agent or sub-contractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned by any of them any liability whatsoever in connection with the Goods, and, if any such claim or allegation should nevertheless be made to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent and sub-contractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for their benefit and, in entering into this contract, the Carrier, to the extent of those provisions, does so not only on his own behalf, but also as agent and trustee for such servants, agents and sub-contractors.

**7. Carrier's Liability.**

A. Port to Port Shipment

1) Where the carriage called for by this Bill of Lading is a Port to Port Shipment, then the Carrier's liability for loss of or damage to the Goods shall be determined by the Hague Rules. If the carriage is performed between ports of States which national laws make the Hague-Visby Rules compulsorily applicable to this Bill of Lading, then the Carrier's liability for loss of or damage to the Goods shall be determined by Hague-Visby Rules.

Neither the Hague Rules nor the Hague-Visby Rules shall apply to this contract where the Goods carried hereunder consist of live animals or cargo which by this contract is stated as being carried on deck and is so carried.

2) All the terms of this Bill of Lading, except Clause 7.B, shall apply to such carriage, save that if any term in this Bill of Lading is inconsistent with or repugnant to the Hague Rules or the Hague-Visby Rules as the case may be it shall to the extent of such inconsistency or repugnance and no further be null and void.

3) Notwithstanding the above the Carrier's liability, if any, shall be limited to loss of or damage to the Goods occurring from and during loading onto any sea-going vessel up to and during discharging from that vessel.

If the carriage of Goods is performed on "free in" or "free out" terms, the Carrier shall not be liable for any loss or damage to the Goods occurred during handling, loading, stowage, securing, lashing or unloading of the Goods by or on behalf of the Merchant.

B. Combined Transport

Where the carriage called for by this Bill of Lading is a Combined Transport, then save as otherwise provided in this Bill of Lading, the Carrier shall be liable for loss of or damage to the Goods to the extent set out below:
1) When the stage of transport where the loss or damage occurred is not known the Carrier shall not be liable for loss of or damage to the Goods resulting there:
   a) acts or omissions of the Merchant, or any person other than the Carrier acting on behalf of the Merchant or from whom the Carrier took the Goods into his charge;
   b) insufficiency or defective condition of the packing or marks;
   c) handling, loading, stowage or unloading of the Goods by or on behalf of the Merchant;
   d) inherent vice of the Goods;
   e) strike, lock-out, stoppage or restraint of labour, the consequences of which the Carrier could not avoid by the exercise of due diligence;
   f) a nuclear incident;
   g) any cause or event which the Carrier could not avoid and the consequences of which he could not prevent by the exercise of due diligence.

The burden of proving that the loss or damage was due to one or more of the above causes or events shall rest upon the Carrier. When the Carrier establishes that, in the circumstances of the case, the loss or damage could be attributed to one or more of the causes or events specified in b. to d. above, it shall be presumed that it was so caused. The Merchant shall, however, be entitled to prove that the loss or damage was not, in fact, caused wholly or partly by one or more of these causes or events.

2) When the stage of transport where the loss or damage occurred is known.
   a) when the stage of transport (not being the stage of transport by sea or inland waters) where the loss of or damage to the Goods occurred is known, the liability of the Carrier in respect of such loss or damage shall be determined by the provisions contained in any International Convention or national law applicable, which provisions;
   cannot be departed from by private contract to the detriment of the Merchant;
   ii. would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of transport where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such International Convention or national law applicable. In absence of mandatory provisions of an International Convention or national law the provisions of Clause 7.B.1 shall apply; or
   b) when the loss of or damage to the Goods occurred during transportation by sea provisions contained in the Clause 7.A. shall apply; or
   c) in respect of carriage by inland waters the Hague Rules shall apply if not contrary to national law compulsorily applicable in this stage of transport.

If the whole of the carriage undertaken by the Carrier is limited to carriage from a Container Yard (CY) or Container Freight Station (CFS) in or immediately adjacent to the sea terminal at the port of loading to a CY or CFS in or immediately adjacent to the sea terminal at the port of discharge, the liability of the Carrier shall be determined by Clauses 7.A.1) and 7.A.2) irrespective of whether the loss or damage is proved to have occurred during the period of carriage at sea or prior or subsequent thereto.

**8. Amount of Compensation**

Unless the nature and value of the Goods have been declared by the Shipper before shipment and inserted in this Bill of Lading, the Carrier shall not in any event be liable for any loss of or damage to the Goods in an amount exceeding the equivalent of SDR 666.67 per package or unit or SDR 2.00 per kilogram of gross weight of the Goods lost or damaged, whichever is higher.

The term SDR means Special Drawing Right as defined by the International Monetary Fund.

Where a Container is used to consolidate Goods, the number of packages or units enumerated in this Bill of Lading as packed in such article of transport shall be deemed as the number of packages or units for the purpose of this Clause in so far as these packages or units are concerned. Except as aforesaid the article of transport shall be considered the package or unit. In any case of the Goods shall be deemed as one package.

In no case shall the amount of compensation exceed the actual loss to the Merchant.

The Carrier shall not be liable in any event for any loss or damage to the Goods if the nature or value thereof has been knowingly misstated by the Shipper in the Bill of Lading.

**9. Delay**

The Carrier does not undertake that the Goods shall arrive at the port of discharge or place of destination at any particular time or to meet any particular market or use, and the Carrier shall in no circumstances be liable for any direct, indirect or consequential loss or damage caused by delay unless there is such liability under any International Convention or national law, the provisions of which cannot be departed from by private contract to the detriment of the Merchant. However, the liability of the Carrier for any loss or damage caused by delay shall in no case exceed the amount of freight for that stage of transport at which the delay occurred.

**10. Notice of Loss and Time Bar**

Unless notice of loss or damage is given in writing to the Carrier or his agent at the port of discharge before or at the time of taking delivery of the Goods, or, if the loss or damage are not apparent, within three consecutive days, such delivery shall be prima facie evidence of the delivery by the Carrier of the Goods as described in the Bill of Lading.

The Carrier, its servants, agents and the Vessel shall in any event be discharged from all liabilities whatsoever under this Bill of Lading unless suit is brought within one year after the delivery of the Goods or the date when the Goods should have been delivered.

**11. Delivery of Goods**

The Goods shall be deemed delivered by the Carrier when the Carrier enables the Merchant to take the Goods or when the Goods are delivered at the time or if the Merchant has delayed or refused to take the delivery of the Goods or that master may put the Goods into warehouse or storage at the risk of the Merchant at the Merchant's expense.

**12. Carrier's Responsibility**

The Bill of Lading shall be prima facie evidence of the taking in charge by the Carrier of the Goods as therein described in respect of the particulars when the had reasonable means of checking. Proof to the contrary shall not be admissible when this Bill of Lading is issued in negotiable form and has been transferred to a third party acting in good faith.

**13. Shipper's Responsibility**

The Shipper shall be deemed to have guaranteed to the Carrier the accuracy at the time the Goods were taken in charge by the Carrier, of the description of the Goods,

members, marks, quantity and weight, as furnished by him, and the Shipper shall indemnify the Carrier against all loss, damage and expense arising or resulting from inaccuracies in or inadequacy of such particulars. The right of the Carrier to such indemnity shall in no way limit his responsibility and liability under this Bill of Lading to any person other than the Shipper.

**14. Dangerous Goods**

No Goods which are of dangerous, inflammable, radioactive or damaging nature shall be shipped without the consent of the Carrier. At the time of shipment of such Goods, the Shipper shall, in compliance with the regulations governing the carriage of such Goods, have them properly packed, distinctly marked and labelled and notify the Carrier in writing of their proper description, nature and the precautions to be taken. In case the Shipper fails to notify the Carrier or notifies him inaccurately, the Carrier may have such Goods landed, destroyed or rendered innocuous when and where circumstances so require, without compensation. The Shipper shall be liable to the Carrier for any loss, damage or expense resulting from such shipment.

Notwithstanding the Carrier's knowledge of the nature of the dangerous Goods and his consent to carry, he may still have such Goods landed, destroyed or rendered innocuous without compensation, when they become an actual danger to the ship, the crew or other persons on board or to other Goods.

The Carrier shall be under no liability to make any general average contribution in respect of such Goods.

**15. Deck Cargo, Animals and Plants Clause**

Goods (other than those stuffed in containers) that are stated on the front of this Bill of Lading to be stowed on deck as containered and are so carried, shall be carried solely at the risk of the Merchant. The Carrier shall not be liable for any loss of or damage to such Goods howsoever caused.

In the case of live animals the Carrier shall not be liable for loss, damage, injury, illness or death howsoever caused.

The Merchant shall indemnify the Carrier against any loss suffered and all extra costs incurred by the carriage of such deck cargo, live animals and plants.

**16. War, Quarantine, Ice, Strikes, Congestion, Etc.**

Should it appear that war, blockade, piracy, epidemics, quarantine, ice, strikes, congestion and other causes beyond the Carrier's control would prevent the Vessel from reaching or entering the port of discharge and/or discharging the Goods in the usual manner thereat and /or departing therefrom, all of which safely and without unreasonable delay, the Carrier is entitled to discharge the Goods at the port of loading or any other safe and convenient port and/or the contract of carriage and all the conditions of this Bill of Lading shall be deemed fulfilled as if the vessel had called at and had the Goods discharged at the original port of discharge.

Any extra expenses incurred under the aforesaid circumstances shall be borne by the Merchant and the Carrier shall have a lien on the Goods for collecting such expenses.

**17. Freight**

1) Freight shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid and non-returnable in any event.

2) The Merchant's attention is drawn to the stipulations concerning currency in which the Freight is to be paid, rate of exchange, devaluation and other contingencies relative to Freight in the applicable Tariff.

3) The Freight has been calculated on the basis of particulars furnished by or on behalf of the Shipper. The Carrier may at any time open any Container or other package or unit in order to reweigh, remeasure or revalue the contents, and if the particulars furnished by or on behalf of the Shipper are incorrect, it is agreed that a sum equal to either five times the difference between the correct Freight and Freight charged or to double the correct Freight less the Freight charged whichever sum is the smaller, shall be payable as liquidated damages to the Carrier.

4) Freight and charges to be contrary in the applicable Tariff all unpaid charges shall be paid without any set-off, counter-claim, deduction or stay of execution.

5) Freight and liquidated damages under sub-clause 17.3) above may be recovered by the Carrier from any person falling within the definition of Merchant in Clause 1 whether or not such person is the Shipper.

**18. Lien**

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract as well as for general average contributions, to whomsoever due, for salvage remuneration and compensation for damages caused by the Goods. In any event any lien shall extend to cover the cost of recovering the same due, and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant.

**19. General Average**

General Average shall be declared, adjusted and settled at any port of loading and in any currency at the Carrier's option according to the York-Antwerp Rules 1994, or any modification thereof in respect of all Goods, whether carried on or under deck.

**20. New Jason Clause**

In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the Goods, Shippers, Consignees or owners of the Goods shall contribute in the Carrier's general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the Goods.

If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon shall, if required, be made by the Goods, Shippers, Consignees or owners of the Goods to the Carrier before delivery.

**21. Both to Blame Collision Clause**

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the Goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said Goods, paid or payable by the other or non-carrying ship or her owners to the owners of the said Goods and set off recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or Carrier.

The foregoing provisions shall also apply where the Owners, Operators or in charge of any ship or ships or objects other than, or in addition to, the colliding or objects are at fault in respect of a collision or contract.

**22. USA Clauses**

1) If this Bill of Lading covers Goods shipped to or from the United States of America, then the carriage of the Goods by Sea Act of the USA, approved on April 16, 1936, is hereby declared to be incorporated herein.

2) In the case of any loss or damage in connection with Goods exceeding in value USD 500.00 lawful money of the United States per package, or in the case of Goods not shipped in packages, per shipping unit, the value of the Goods shall be deemed to be USD 500.00 per package or per shipping unit have been declared in writing by the Shipper upon delivery to the Carrier and inserted in the Bill of Lading and an extra charge paid. In such case, if the actual value of the Goods per package or per shipping unit has exceeded such declared value, the value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

3) In case the contract evidenced by this Bill of Lading is subject to the US Carriage of Goods by Sea Act, the provisions stated in the said Act via II govern before loading and after discharge and throughout the entire time the Goods are in Carrier's custody.

WIRE TRADING LLC
120 DISON AVE SUITE 900
NEW YORK NY 10022

TERRIBLE FINANCIAL INC.
Authorized Signature

BY THE ORDER OF
WITHOUT RECOURSE AND WITHOUT
WARRANTIES OF ANY KIND
AUTHORIZED SIGNATURE