USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/08

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
UNIWIRE TRADING LLC,

                    Plaintiff,                MEMORANDUM AND ORDER

       - against -                            07 Civ. 3427 (NRB)

M/V WLADYSLAW ORKAN, CHINESE-POLISH JOINT
STOCK SHIPPING COMPANY, and STEMBLAR
SHIPPING COMPANY,

                    Defendants.
---------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Uniwire Trading LLC ("Uniwire") brought this maritime action to recover for cargo damage allegedly sustained during a voyage to the United States aboard the M/V Wladyslaw Orkan ("Orkan"). Defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b) on the basis of the forum selection clause in the bills of lading, which, they contend, designates the district courts of Gdansk, Poland as the exclusive forum for this action. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND[1]

In April, 2006, Uniwire and Chinese-Polish Joint Stock Shipping Company ("CPJS") entered into a contract for the carriage of galvanized steel pipes from Xingang and Tianjin, China to New Orleans aboard the M/V Wladyslaw Orkan.[2] CPJS had time chartered the Orkan from Stemblar Shipping Company ("Stemblar") pursuant to a charter party granting CPJS the right to "sign bills of lading or waybills on behalf of the Master."[3] CPJS exercised this right and issued Uniwire two standard form bills of lading that included a forum selection clause:

> Any claim or action against the Carrier arising from or in connection with this Bill of Lading whether in breach of contract or in tort or otherwise shall be exclusively governed by Polish law and brought before District Court in Gdansk.[4]

The bills of lading defined the term "Carrier" as "the party on whose behalf this Bill of Lading has been signed," which, by all accounts, was CPJS.[5]

---

[1] The facts set forth herein have been drawn from the Complaint ("Compl."), the Declaration of Radoslaw Chmielinski ("Chmielinski Decl."), and the exhibits to the Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss ("Pl. Opp.") and the Reply Memorandum of Law in Support of Motion to Dismiss ("Reply").

[2] See Compl. ¶ 5.

[3] Chmielinski Decl. Ex. A ¶ 30.

[4] Id.

[5] See Pl. Opp. Ex. 1; Chmielinski Decl. Ex. B.

After discharging Uniwire's shipment in New Orleans, the Orkan proceeded to New York. Uniwire then advised the corporate defendants of its intent to file an in rem action in the Southern District of New York alleging the defendants' liability for rust and other physical damage to its cargo.[6] To avoid tying up the Orkan, the West of England P&I Club ("West of England"), the insurer for all three defendants, posted a Letter of Undertaking ("LOU") as security for any final decree that might be rendered against the Orkan.[7] Under the LOU, West of England also agreed

> [t]o file or cause to be filed a claim of owner of the M/V Wladyslaw Orkan in the event suit is commenced in the United States District Court for the Southern District of New York, and agreement that the United States District Court for the Southern District of New York is the proper venue for said action.[8]

Notwithstanding this provision, the LOU explicitly reserved "any rights or defenses" that Stemblar and the Orkan had under the bills of lading.[9]

## DISCUSSION

Uniwire concedes that the forum selection clause in the bill of lading is valid and enforceable insofar as it applies to the in

---

[6] See Reply Ex. G.

[7] See Chmielinski Decl. Ex. D.

[8] Id.

[9] Id.

-3-

personam action against CPJS. The only issue before the Court is whether that provision also compels the dismissal of the action against Stemblar and the Orkan in favor of the Polish forum. Uniwire contends that the forum selection clause is: (i) superceded by the specific venue provision in the later-executed LOU; (ii) inapplicable to the Orkan and Stemblar, neither of whom is the "carrier," as that term is defined in the bills of lading; and (iii) void because Polish law does not permit Uniwire to bring in rem claims, a substantive right guaranteed by COGSA. We briefly review the legal standards applicable to the pending motion and then turn to consider each of Uniwire's arguments seriatim.

A.   **Legal Standards**

Neither the Supreme Court nor the Second Circuit has specified the procedural mechanism by which a defendant may seek dismissal of the action in favor the contractual forum. See, e.g., Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 822 (2d Cir. 2006); New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997). Nevertheless, several principles of analysis have emerged from the various decisions of the Second Circuit addressing the issue. In ruling on a motion to dismiss based on a forum selection clause, the district court may rely on the pleadings as well as any affidavits submitted by the parties. See Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007). If the submissions reveal any material issues of fact, and so long as the

plaintiff has made a prima facie showing of the propriety of proceeding with the action, the court should resolve any factual disputes following an evidentiary hearing at which the plaintiff is afforded an adequate opportunity to be heard. See New Moon Shipping Co., Ltd., 121 F.3d at 29. In the absence of any disputed facts, "the issue is one of law which the court must decide." Asoma Corp., 467 F.3d at 822-23.

B.   **Waiver of Venue Objections in Letter of Undertaking**

Uniwire's principle basis for avoiding dismissal of the in rem action in favor of the Polish district courts is the venue provision in the LOU, which states "that the United States District Court for the Southern District of New York is the proper venue for said action."[10] Defendants acknowledge that this clause plainly

> conveys jurisdiction and venue relating to the in rem claim because the vessel was in New York and subject to arrest at the time the LOU was issued [, but] . . . does not speak in terms of personal jurisdiction or venue for hearing the entire litigation.[11]

However, we find no merit in the defendants' attempt to relieve the Orkan of the waiver. Neither a separate clause in the LOU reserving the defendants' rights under the bills of lading nor the

---

[10] See Chmielinski Decl. Ex. D.

[11] Reply at 8 (emphasis added); see also Pl. Opp. At 3 ("By virtue of this LOU, defendants and the surety have stipulated that this Court is the proper venue for this in rem action.").

-5-

general public policy in favor of enforcing forum selection clauses can overcome the explicit agreement to litigate in the Southern District of New York.

"A letter of undertaking replaces the vessel as the res and moots the question of the need for separate in rem claim," Calypso Shipping Corp., S.A., 310 F.3d at 107, but does not, without more, waive the right to seek dismissal on the basis of an applicable forum selection clause. See, e.g., Bison Pulp & Paper Ltd. v. M/V Pergamos, No. 89 Civ. 1392, 1995 WL 880775, at *16 (S.D.N.Y. Nov. 29, 1995); Oman Refinery Co. v. MT Bertina, No. 92 Civ. 3616, 1992 WL 471304, at *2 (C.D. Cal. Sept. 25, 1992); National Material Trading v. M/V Kaptan Cebi, No. C.A. 2:95-3673-23, 1997 WL 915000, at *5 (D.S.C. Mar. 13, 1997). A waiver of a contractual right to a specified forum must be "clearly agreed to and not implied from either circumstances or contractual language that does not readily support such an inference." Bison Pulp & Paper Ltd., 1995 WL 880775, at *16.

The LOU's boiler plate reservation of rights does not negate the parties' specific agreement that this Court is "the proper venue" for the in rem action. The defendants do not contend that the forum selection clause in the LOU is ambiguous, only that it conflicts with the general savings clause in the LOU. It is axiomatic that "specific terms and exact terms are given greater weight than general language." Restatement (Second) of Contracts § 203(c) (1981); Arthur Linton Corbin, Corbin on Contracts §§ 545-54,

at 521 (1952) ("[W]ords of general description should generally yield to words that are more specific."). Moreover, "an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 558 (2d Cir. 2000). The only construction of the LOU that gives effect to the language pertaining to "the proper venue" is one in which the generic savings clause applies solely to those rights and defenses that were not specifically waived under the LOU.

At oral argument, counsel for the defendants maintained that the savings clause reflects the parties' intent to reserve <u>all</u> of the Orkan's rights under the bills of lading, including the choice of a Polish forum, and that the LOU should be understood as merely an agreement to secure any judgment Uniwire obtained. This position fails to comport with the realities of maritime commerce, against which the parties drafted the LOU. Uniwire had a statutory right to seek the arrest of the Orkan. Once notified of Uniwire's intent to exercise that right, Stemblar had the option of either avoiding the economic consequences of the arrest of the Orkan by consenting to the terms of the LOU or allowing the arrest to proceed and then moving in court to vacate the arrest and dismiss the action in favor of the Polish forum, in accordance with the bills of lading. Stemblar, having chosen the former option and thereby induced Uniwire to forgo the arrest of the Orkan, cannot

now be allowed to avoid the plain language of the LOU consenting to this forum.[12]

The crux of the defendants' policy argument in favor of dismissal is the alleged inequity of enforcing a waiver procured by threatening the arrest of the vessel. We disagree with the basic premise of this position which conveniently sidesteps the fact that Uniwire is entitled to challenge the validity of the forum selection clauses in the bills of lading. Thus, at least where a maritime plaintiff has a good faith basis for resisting the enforcement of a forum selection clause, we see no harm in honoring a bargain in which the plaintiff relinquishes its right to arrest the vessel and the vessel owner waives the applicability of the forum selection clause to the in rem claim. Here, as discussed infra, given the persuasive force of International Marine Underwriters CU v. M/V Kasif Kalkavan, 989 F. Supp. 498, 499 (S.D.N.Y. 1998) and the lack of precedent on the issue, Uniwire was justified in asserting that the forum selection clause violated its COGSA rights. Moreover, defendants' argument overlooks the economic power which it exercised to include a Polish forum selection clause in the first instance.

Accordingly, the motion to dismiss is denied insofar as it relates to the in rem claim.

---

[12] We have serious doubts that the pre-suit letter of undertaking, if understood to merely secure a potential judgment against a vessel, would be any consideration for a waiver of the right to arrest the vessel (the purpose of which is to secure the plaintiff's in rem claim).

-8-

C.  **The Parties to the Bills of Lading**

As a second quiver in its bow, Uniwire contends that the forum selection clause in the bills of lading is expressly limited to claims or actions "against the Carrier" and does not, therefore, extend to Stemblar and the Orkan because neither is a "Carrier," as that term was defined in the bills of lading.  The issue of whether the Orkan is a party to the bills of lading has been effectively mooted by our ruling, supra, that the LOU conferred jurisdiction and venue over the in rem action, and thus, we focus our attention here on whether Stemblar may benefit from the forum selection clause.[13]  We reject Uniwire's argument that Stemblar is not a "Carrier" because, though facially meritorious, it ignores the undisputed agency relationship between CPJS and Stemblar.

It is hornbook law that "[a] contract of carriage with an owner may be entered into either directly between the parties, or by virtue of a charterer's authority to bind the owner by signing bills 'for the master.'"  2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 11-7 (3d ed. 2001); see also Asoma Corp. v. SK

---

[13]  We note, however, that a vessel's in rem liability derives from the fiction that the vessel is a legal entity with rights and duties vis-a-vis the cargo interest.  See Insurance Co. of North America v. S/S American Argosy, 732 F.2d 299, 302 (2d Cir. 1984).  A judgment against the vessel is effectively one against its owner.  Id.  Since the vessel can only act through individuals, it is often deemed to have ratified a bill of lading authorized by its owner, the real party in interest.  2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 11-7 (3d ed. 2001); Insurance Co. of North America, 732 F.2d at 302; Demsey & Associates, Inc. v. Steamship Sea Star, 461 F.2d 1009, 1014-15 (2d Cir. 1972); see also Cargill B.V. v. S/S Ocean Traveller, 726 F. Supp. 56, 61 (S.D.N.Y. 1989).

Shipping Co., Ltd., 467 F.3d 817, 827 (2d Cir. 2006). Thus, "a vessel owner becomes a party to the bill of lading when the vessel owner, through the master, grants authority to the charterer or to charterer's agent to sign on the vessel owner's behalf." Thyssen, Inc. v. M/V ALPHA JUPITER, No. 96 Civ. 8734, 1997 WL 882595, at *8 (S.D.N.Y. Aug. 15, 1997) (citation and quotation marks omitted); see also Volgotanker Joint Stock Co. v. Vinmar Intern. Ltd., No. 01 Civ. 5064, 2003 WL 23018798, at *5 (S.D.N.Y. Dec. 22, 2003)("[W]hen a bill of lading is signed on behalf of the master, the owner becomes a party to the bill."); Thyssen, Inc. v. M/V Marcos N., No. 97 Civ. 6181, 1999 WL 619634, at *6 (S.D.N.Y. Aug. 16, 1999). Although the issue most frequently arises in the context of whether a particular defendant is a "carrier" within the COGSA framework,[14] see, e.g., Blommer Chocolate Co. v. Nosira Sharon Ltd., 776 F. Supp. 760, 765 (S.D.N.Y. 1991), the vessel owner's standing as a party to the bill of lading is merely an application of the basic proposition of agency law that a principal may sue, and be sued, upon a contract entered into by his or her agent. See 12 Williston on Contracts § 35:48 (4th ed.); Restatement (Third) Of Agency § 6.03 (2006). Where the vessel owner has delegated authority to contract on his or her behalf, a forum selection clause in the bill of lading inures to the benefit of the vessel owner no less so than

---

[14] Section 1301(a) of COGSA defines a "carrier" as "the owner or the charterer who enters into a contract of carriage with a shipper." 46 U.S.C. § 1301(a)(1970).

any other provision of the bill of lading. See Asoma Corp., 467 F.3d at 827; Thyssen, Inc., 1997 WL 882595, at *8.

There is no dispute that CPJS issued the bills of lading "on behalf of" Stemblar, in accordance with the terms of the charter party.[15] Thus, notwithstanding the fact that it was not a signatory to the bills of lading, Stemblar owes duties to Uniwire under the bills but also retains the reciprocal right to compel compliance with any favorable terms, such as the forum selection clause.

D.  **The COGSA Right to Bring In Rem Claim Against a Vessel**

In the alternative to its argument that the defendants specifically agreed to waive the forum selection clause in the bills of lading, Uniwire contends that enforcement would deprive it of the opportunity to proceed directly against the vessel in rem, a right guaranteed by COGSA but not recognized under Polish law.[16] Although our resolution of the issue of whether the LOU constitutes a consent to proceed in this forum eliminates the need to reach this alternative argument, we nonetheless address the issue for the benefit of any reviewing court. We join with the majority of

---

[15] Uniwire does not contend that CPJS's issuance of the bills of lading was unauthorized or otherwise outside the scope of its authority, an argument that might cause us to reconsider Stemblar's, but not the Orkan's, status. 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 11-7 (3d ed. 2001) (if charterer signs the bill of lading, vessel retains its party status even if owner "neither authorized nor issued" the bill); Demsey & Associates, Inc., 461 F.2d at 1014-15.

[16] There is no dispute that, under Polish law, Uniwire could not bring an in rem claim against the Orkan. See Reply Ex. F ¶ 6.

courts to have examined this issue in concluding that COGSA does not grant a substantive right to bring an in rem action against the vessel, particularly when the cargo interest has failed to demonstrate how complete recovery could not be had by proceeding against the carrier(s), in personam.

Section 3(8) of COGSA states that:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with goods, arising from negligence, fault or failure . . . shall be null and void and of no effect.

46 U.S.C. § 1303(8). Drawing on a distinction between COGSA "duties and obligations" and the "mechanisms for their enforcement," the Supreme Court has held that "[t]he central guarantee of § 3(8) is that the terms of a bill of landing may not relieve the carrier of the obligations or diminish the legal duties specified by the Act." Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 515 U.S. 528, 535 (1995). The costs and means of enforcing those obligations and duties are not so protected. Id.

The in rem maritime action is a unique feature of American admiralty law made possible by the legal construct of vessels as entities capable of being sued. The personification of a vessel is, of course, a fiction created for the purpose of ensuring an efficient and expedient resolution of a maritime plaintiff's claims, without regard for whether the shipowner, the real party in interest, is the culpable party. See, e.g., Martin Davies, In

Defense of Unpopular Virtues: Personification and Ratification, 75 Tul. L. Rev. 337 (2000); see also Insurance Co. of North America, 732 F.2d at 302.

Notwithstanding the language of section 3(8), which appears to preempt any contractual provision that lessens the liability of "the carrier or the ship," see International Marine Underwriters CU v. M/V Kasif Kalkavan, 989 F. Supp. 498, 499 (S.D.N.Y. 1998) (emphasis added), the majority of the district courts of the Second Circuit have taken a pragmatic and policy-based approach to the issue, adopting the view of an in rem action as a procedural mechanism for simplifying the task of suit and judgment collection. Consequently, the likelihood that a maritime plaintiff will be deprived of an action directly against the vessel has not, by itself, justified setting aside a valid forum selection clause. See Salim Oleochemicals, Inc. v. M/V Shropshire, 177 F. Supp. 2d 159, 161 (S.D.N.Y. 2001); Reed & Barton Corp., et. al. v. M.V. Tokio Express, et al., No. 98 Civ. 1079, 1999 WL 92608, at *3 (S.D.N.Y. Feb. 22, 1999); Thyssen, Inc. v. M/V Markos N, No. 97 Civ. 6181, 2001 WL 902564, at *3-4 (S.D.N.Y. Aug. 7, 2001); see also Fireman's Fund Insurance Company v. M.V. DSR Atlantic, 131 F.3d 1336, 1339 (9th Cir. 1997), cert denied 525 U.S. 921 (1998). Although the Second Circuit has not squarely addressed the issue, it has acknowledged that declining to enforce a foreign forum selection clause on the basis of the unavailability of an in rem claim "would contradict most case law on the matter." Thyssen,

Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 107 (2d Cir. 2002); see also Far Eastern Antique Arts v. M/V Cho Yang Success, No. 01 Civ. 8375, 2002 WL 1313308, at *2 (S.D.N.Y. June 14, 2002) (recognizing the "tide of the majority of case law").

We agree with the majority position that, ordinarily, an in rem claim against the vessel is merely duplicative of in personam claims against the carrier(s). See, e.g., Gilmore & Black, The Law of Admiralty § 9-18 (2d ed. 1975) (noting the in rem action "has played a negligible role in the development" of maritime law). In this case, we have no reason to believe that permitting an in rem claim to proceed in this Court would confer any benefit other than an additional mechanism for enforcement. See, e.g., M/V Markos N, 2001 WL 902564, at *4.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part. To recapitulate, since we upheld the LOU's consent to the Southern District of New York as the proper forum, we retain jurisdiction over the in rem claim against the Orkan (and Stemblar appearing on its behalf). However, having found no basis to invalidate the forum selection clause in the bills of lading designating Poland as the forum, we dismiss the in personam claims against defendants Stemblar and CPJS. The parties are granted four (4) months from the date of this Order to conclude discovery.

Dated:   New York, New York
         June 24, 2008

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum & Order have been mailed on this date, June 24, 2008, to the following:

Counsel for Plaintiff:
James F. Sweeney, Esq.
Nicoletti Hornig Campise & Sweeney
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801

Counsel for Defendants:
James L. Ross, Esq.
Freehill, Hogan & Mahar LLP
80 Pine Street
New York, NY 10005